160 P.3d 326

In re the MARRIAGE OF Carl E. HATTON, Jr., Appellee, and
Julie A. Hatton, Appellant.

No. 05CA0469.

Colorado Court of Appeals, Div. II.

March 8, 2007.

[160 P.3d 328]
        Anderson & Travis, P.C., Wayne E. Anderson, Colorado Springs, Colorado, for Appellee.
        Julie A. Hatton, Pro Se.
        Roberta Earley for Appellant, on the briefs.
        Opinion by Judge TAUBMAN.
 
        In this post-dissolution of marriage proceeding, Julie A. Hatton (mother) appeals from the December 14, 2004, order awarding all parenting time and decisionmaking responsibility for the parties' three children to Carl E. Hatton, Jr. (father) and allowing her no contact with the children except with father's written permission. We affirm in part, reverse in part, and remand for further proceedings.
        A petition for the dissolution of the parties' marriage was filed in August 1998. Initially, mother was designated as the primary residential parent. Subsequently, parenting time was divided equally.
        Several parenting time evaluations were conducted in response to problems perceived by the parties. In September 2001, after an updated evaluation was completed, a new parenting time order was entered. Under the terms of that order, father was given sole decision-making responsibility and was designated the primary residential parent. The court found that contact with mother would significantly impair the children's emotional well-being, and for that reason, mother was denied all contact with the children for a period of thirty days. Thereafter, mother was allowed only supervised therapeutic contact with the children until the family therapist in conjunction with the children's guardian ad litem determined that additional parenting time should be permitted. This order was affirmed on appeal in November 2002. In re Marriage of Hatton, (Colo.App. No. 01 CA2012, Nov. 7, 2002) (not published pursuant to C.A.R. 35(f)).
        In July 2002, with the concurrence of the therapist and the guardian ad litem, the parties reached an agreement regarding increased parenting time for mother. However, disputes regarding parenting time continued, and in September 2003, mother moved for modification of both parenting time and decision-making responsibility. In response, father requested that mother's parenting time be reduced and supervised.
        A new parental evaluation was ordered. In December 2004, after reviewing the report of the parental evaluator and considering the testimony offered by the evaluator, the parties, and others during hearings held in October and November 2004, the court found that the existing parenting time arrangements were detrimental to the children and their emotional development was being impaired. The court allocated sole parenting time and decision-making responsibility to father and ordered that mother should not "have any contact whatsoever with the children in any form, including but not limited to phone, letter, e-mail and cell phone, at any time or place unless she has signed written permission from [father] that is specific with regard to the child or children and date, time and place." The court also ordered father to arrange to send the oldest child to an out-of-town boarding school as soon as practicable so that she would be removed from the conflict and her younger siblings. The court stated that it would consider some regular structured contact between mother and the two younger children after the oldest child had entered an appropriate boarding school. Mother's motion for posttrial relief was denied, and she now appeals.

I. Fairness of Hearing

        Mother contends that the trial court erred in limiting or not considering evidence and testimony, including rebuttal witnesses, thereby accepting the evaluator's recommendations without correlating them to the facts. We are not persuaded.

160 P.3d 329

A. Due Process

        Mother argues that the court improperly denied her the right to call a number of witnesses who could have rebutted the findings of the parental evaluator. We construe this argument as a claim that she was denied due process, and as such, we reject it.
        The opportunity to be heard is an inherent element of due process and must be granted at a meaningful time and in a meaningful manner. The trial court must balance its obligation to accord each party due process against its need to regulate its calendar and efficiently manage the case before it. However, a court's interest in administrative efficiency may not be given precedence over a party's right to due process. In re Marriage of Goellner, 770 P.2d 1387 (Colo.App. 1989).
        Under Â§ 14-10-127(3), C.R.S.2006, any party to a proceeding concerning the allocation of parental responsibilities in which a parental evaluator has been appointed may call the evaluator and "any person with whom the evaluator has consulted" for cross-examination.
        Under former C.R.C.P. 26.2(a)(2) and (3), in effect at the time of these proceedings, a party was required to disclose expert and nonexpert testimony at least sixty days before the date set for the commencement of the hearing, and rebuttal testimony within twenty days after the disclosure made by the other party. Cf. C.R.C.P. 16.2(e)-(g) (rules for disclosure, discovery, and use of experts, effective Mar. 1, 2006).
        Here, mother filed a trial management certificate on October 18, 2004, two days before trial. In it, she named more than forty witnesses, including three identified as expert witnesses. Father objected to all the witnesses, except four previously identified by mother, on the ground that mother's disclosure was untimely under C.R.C.P. 26.2. He also objected to two of the three witnesses identified as experts on the ground that one had been dismissed from the case in 2000 because the court found that she had become an advocate for mother and another had admitted to the parental evaluator that he was biased toward mother. He questioned the "legal relevance" of the testimony of the third, who had been retained by mother to review the parental evaluator's data and report, because she had only one day to interview the children and review the parental evaluator's fifty-two-page report.
        The dispute was resolved at a status conference held on October 19, 2004, one day before trial. The court ruled that mother would be allowed to call her recently retained expert and "three other people" in addition to the witnesses previously identified. Mother argued that under Â§ 14-10-127(3), she had the right to call as a witness anyone whom the evaluator had contacted. The court was not persuaded that mother could do so without giving notice to father.
        Assuming, without deciding, that Â§ 14-10-127(3) authorized mother to call as a witness any person contacted by the evaluator, we conclude that neither Â§ 14-10-127(3) nor former C.R.C.P. 26.2 suggests that she could do so without providing prior notice to father. Thus, the trial court did not err in refusing to allow mother to call all the witnesses named in her trial management certificate. We note that despite the lack of notice, mother was permitted to call three rebuttal witnesses from her list, the expert that she had retained to review the evaluator's report, and the witnesses listed earlier. We note further that the court afforded the parties four half-day sessions for the hearing, thus providing sufficient time to hear the most relevant testimony. We conclude that the trial court properly balanced its obligation to accord mother due process against its need efficiently to manage the case before it.

B. Bias

        Mother argues that the trial court was biased against her, and that it demonstrated its bias by limiting or not considering evidence that would have been favorable to her and by summarily accepting the report of the parental evaluator, who was himself biased against her. We are not persuaded.
        We may presume that the trial court considered the evidence before it. See In re Marriage of Udis, 780 P.2d 499 (Colo.1989) (where both parties presented evidence of

160 P.3d 330

their income and expenses at the hearing, the trial court could be presumed to have considered their expenses in arriving at its decision regarding maintenance).
        It is the responsibility of the trial court as the trier of fact to determine the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence. In re Marriage of McNamara, 962 P.2d 330 (Colo.App.1998).
        Adverse rulings, standing alone, do not constitute grounds for claiming bias or prejudice. In re Marriage of Johnson, 40 Colo.App. 250, 576 P.2d 188 (1977).
        At trial, the court heard the evaluator's testimony in favor of father as well as the testimony of witnesses more favorable to mother. In its order, the court stated that it had "reviewed and considered the testimony of the parties, professionals and other witnesses ... as well as the numerous exhibits submitted by the parties, documents in the court file and the written arguments of counsel." The court found the evaluator's report persuasive, and found some of the testimony presented by mother's witnesses less persuasive. Based on its evaluation of the evidence, the court allocated all parenting time and sole decision-making responsibility to father.
        While mother points to several statements by the trial court that she maintains reflect bias, we conclude that those statements were isolated and insufficient to establish the judge's lack of impartiality as a matter of law. See Smith v. Dist. Court, 629 P.2d 1055, 1056 (Colo.1981) ("Unless a reasonable person could infer that the judge would in all probability be prejudiced against the petitioner, the judge's duty is to sit on the case.").
        We are satisfied that the court considered and weighed the evidence before it and that its ruling is amply supported by that evidence, except to the extent we conclude in part III below that the trial court must reconsider that part of its order prohibiting any contact between mother and her children. We reject mother's contention that the court ignored the evidence favorable to her, and we conclude that she has not shown that the court was biased against her.

II. Parenting Time Modification

        Mother contends that the trial court abused its discretion in entering orders contrary to the evidence and the facts. We do not agree, except to the extent discussed in part III below.
        The determination of parenting time is a matter within the sound discretion of the trial court, taking into consideration the child's best interests and the policy of encouraging the parent-child relationship. In re Marriage of England, 997 P.2d 1288 (Colo.App.1999). The trial court's discretion in such matters is broad, and every presumption that supports upholding the court's decision will be exercised. In re Marriage of Harris, 543 P.2d 1286 (Colo.App.1975)(not published pursuant to C.A.R. 35(f)). When a trial court's order is supported by competent evidence, it should not be disturbed on review. In re Marriage of Udis, supra.
        A trial court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner. In re Marriage of Page, 70 P.3d 579 (Colo.App.2003).
        Here, a parenting evaluator was appointed in 2004 after mother sought changes in the allocation of parental responsibilities and father requested that mother's parenting time be reduced "pursuant to Â§ 14-10-129(1)(b)," C.R.S.2006. The evaluator interviewed both parties and each of the children; reviewed psychological tests given to both parents, the stepmother, and the oldest child; reviewed documents in the court file as well as documents provided by the parties; reviewed comments provided by collateral witnesses; and consulted with professionals previously involved in the case. He noted that professionals previously involved in the case had been "diametrically opposed" in their perceptions of the parties and in their recommendations, and he explained why he found some professionals and other contacts more credible than others. He reported on his investigation into a recent allegation that father had physically abused one of the children, and explained why he concluded that the children were not credible sources of information regarding the alleged abuse.

160 P.3d 331

        After concluding his investigation, the evaluator found that mother had a "seriously impaired capacity for reality testing" and met the diagnostic criteria for a "Delusional Disorder of a persecutory (nonbizarre) type"; that the two older children had become enmeshed in mother's battle against father; that the children were not credible reporters because they were colluding with mother to generate false allegations against father; and that the extent of mother's enmeshment and role reversal with the two older children constituted a form of emotional child abuse. The evaluator found that the oldest child was following mother's lead in applying pressure to her younger siblings to alienate them from father. He concluded that mother represented a "real and immediate risk" to the children, and that the oldest child represented a real and immediate risk to the younger children.
        The evaluator also found that, in general, father had displayed reasonable judgment in attempting to protect the children while testing how much contact with mother they could tolerate, and concluded that if father were to have sole decision-making responsibility, he would be capable of reasonably regulating the contact between the children and mother.
        Based on these findings, as well as findings on each of the "best interests" factors set forth in Â§ 14-10-124(1.5)(a), C.R.S.2006, the evaluator recommended that father should be given all parenting time, and that mother should be restricted from any contact with the children unless given advance written permission for such contact by father.
        Here, the trial court found after reviewing the evaluator's report and hearing the testimony of the evaluator, both parents, and other witnesses, that the existing parenting time schedule was detrimental to the children and was significantly impairing their emotional development. The court considered the evaluator's analysis of the statutory criteria for determining the best interests of the children and concluded that the evaluator's findings had been proved by a preponderance of the evidence.
        The court's order is supported by evidence in the record, except to the extent discussed in part III below. We are not persuaded that the court abused its discretion in weighing the evidence or in finding some witnesses more persuasive than others, nor are we persuaded that the order was arbitrary, unreasonable, or unfair. Thus, we reject mother's contention that the court abused its discretion in entering this order.

III. Denial of Contact with Children

        Mother contends that the trial court erred in that part of its parenting time order denying her any contact with her children. Because we conclude that the trial court must expressly consider the best interests of the child standard, including the least detrimental alternative to the children, in addition to the endangerment standard, we agree that the issue must be reconsidered.

A. Statutory Framework

        The provisions for modification of parenting time are set forth in Â§ 14-10-129, C.R.S. 2006.
        Section 14-10-129(2)(d), C.R.S.2006, provides that a court shall not modify a prior order concerning parenting time that substantially changes the parenting time as well as changes the party with whom the child resides the majority of the time unless, as pertinent here, it finds that "[t]he child's present environment endangers the child's physical health or significantly impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." The trial court stated that it was relying on this provision in its ruling.
        However, two other subsections of Â§ 14-10-129 are relevant here. First, Â§ 14-10-129(1)(a)(I), C.R.S.2006, provides that, "[e]xcept as otherwise provided in [Â§ 14-10-129(1)(b)(I), C.R.S.2006], the court may make or modify an order granting or denying parenting time rights whenever such order or modification would serve the best interests of the child" (emphasis added). In turn, Â§ 14-10-129(1)(b)(I) states that "[t]he court shall not restrict a parent's parenting time rights unless it finds that the parenting time would endanger the child's physical health or significantly

160 P.3d 332

impair the child's emotional development" (emphasis added).
        Thus, the best interests of the child must be considered in every decision regarding the grant or denial of parenting time rights. For parenting time to be restricted, a court must first find endangerment under Â§ 14-10-129(1)(b)(I) and (2)(d), as the trial court did here. However, even if Â§ 14-10-129(1)(b)(I) applies, a court also must determine whether the restriction is in the best interests of the child.
        Applying the best interests standard includes determining whether there is a less detrimental alternative to ending all contact between a parent and a child. See In re Marriage of Martin, 42 P.3d 75 (Colo.App. 2002) (best interests of child standard includes concept of least detrimental alternative); see also In re Marriage of Bertsch, 97 P.3d 219 (Colo.App.2004) (court must consider whether parent has been a perpetrator of child or spouse abuse and husband's guilty plea to third degree assault as two factors under best interests of child standard, but such acts do not preclude husband from being allocated primary parental responsibility).
        In Martin, the division concluded that the concept of the least detrimental alternative is subsumed within the concept of the best interests of the child set forth in Â§ 14-10-124(1.5)(a). Further, the Martin division held:
        These [best interests] factors indicate that when a trial court is determining appropriate parenting time, it must balance a host of relevant factors, recognizing that any alternative it chooses may carry with it both advantages and disadvantages. Additionally, the trial court must exercise its discretion in determining parenting time consistently with the express public policy of encouraging contact and frequent visitation between each parent and the children.
        In re Marriage of Martin, supra, 42 P.3d at 79; see Â§ 14-10-104.5, C.R.S.2006 (General Assembly "recognizes that, in most cases, it is in the best interests of the children of the marriage to have a relationship with both parents and that, in most cases, it is the parents' right to have a relationship with their children"); Â§ 14-10-124(1), C.R.S.2006 (General Assembly declares that "it is in the best interests of all parties to encourage frequent and continuing contact between each parent and the minor children of the marriage after the parents have separated or dissolved their marriage"); see also Leona M. Kopetski, Identifying Cases of Parent Alienation SyndromeâPart I, 27 Colo. Law. 65, 68 (Feb.1998) ("Remediation [for parental alienation syndrome] should almost never consist of excluding a relationship with the problematic parent. Such exclusion increases intractable conflict and litigation and deprives children of adequate parenting from any source."); Janet R. Johnston, Children of Divorce Who Reject a Parent and Refuse Visitation: Recent Research and Social Policy Implications for the Alienated Child, 38 Fam. L.Q. 757, 775 (Winter 2005) (when child in custody dispute is reluctant to visit a parent, "clear court orders that affirm parental rights and restore an appropriate access plan" are helpful, while what hurts, among other things, are long delays where the child has no contact with the parent and "parentectomies," that is, abruptly severing the child's relationship with the aligned parent); cf. In re Marriage of Sepmeier, 782 P.2d 876, 878 (Colo.App.1989) (under prior statute, court held that even a parent who has been found to be unfit to be a custodial parent may be entitled to liberal visitation rights).
        Our conclusion that both the endangerment standard and the best interests of the child must be considered before parenting time is completely eliminated is consistent with the statutory scheme. Section 14-10-129(3)(a), C.R.S.2006, provides that if a parent (offending parent) has been convicted of one of an enumerated list of serious crimes, including first degree murder and sexual assault, or if the parent has been convicted of any crime in which the underlying factual basis has been found by the court on the record to include an act of domestic violence that constitutes a potential threat or endangerment to the child, the other parent may file an objection to parenting time by the offending parent with the court. In that event, if the offending parent objects, the court must hold a hearing within thirty days

160 P.3d 333

and determine, using a best interests of the child standard, whether the offending parent may have parenting time.
        Thus, even in those circumstances of serious criminal conduct and domestic abuse, which by their nature would likely establish endangerment and thus be most susceptible of an order denying parenting time rights, the best interests standard applies to the determination of whether parenting time should be permitted. See People in Interest of A.R.D., 43 P.3d 632 (Colo.App.2001) (under Â§ 14-10-129(3)(a), court applies best interests standard and upholds order denying parenting time to father convicted of incest with a daughter from a prior marriage).
        Our interpretation is also consistent with decisions from other states that have enacted the Uniform Marriage and Divorce Act (UMDA). See Estate of Burford v. Burford, 935 P.2d 943, 953 (Colo.1997).
        Our review of decisions from other jurisdictions that have adopted the UMDA supports our conclusion that before parenting time may be eliminated completely, the trial court must consider both the endangerment standard and the best interests of the child. For example, in Kovacs v. Kovacs, 869 S.W.2d 789 (Mo.Ct.App.1994), the court approved the trial court's denial of visitation based on the father's sadistic and violent behavior, drinking, and drug use, concluding that the evidence supported a finding of endangerment and, further, that the father's conduct was such that even supervised or limited visitation had been found not to be in the children's best interests.
        Courts in other jurisdictions have similarly concluded, either explicitly or implicitly, that both the best interests and endangerment standards should be applied in determining whether to eliminate a noncustodial parent's right to visitation. See, e.g., In re Maricopa County Juvenile Action No. J.D.-5312, 178 Ariz. 372, 873 P.2d 710 (Ct.App.1994); D.A.H. v. G.A.H., 371 N.W.2d 1 (Minn.Ct. App.1985).

B. Application

        As noted, the trial court stated expressly that it was applying the endangerment standard in its parenting time order. The use of that standard was appropriate to determine that parenting time rights should be allocated to father rather than to mother, as discussed in part II above, but before denying mother's parenting time rights completely, the court should have considered whether the denial was in the children's best interests by expressly considering the least detrimental alternative to ensure their development. In so concluding, we recognize that the trial court did not have the benefit of the above analysis in this regard.
        The trial court adopted the findings of the parenting evaluator, which included his analysis of the best interests factors set forth in Â§ 14-10-124(1.5)(a). However, even though the trial court referred to the best interests standard, it did not expressly consider the concept of the least detrimental alternative to ensure the children's development.
        Nor did it consider the public policy of encouraging frequent and continuing contact between each parent and the minor children when it prohibited any contact whatsoever between mother and the children.
        While the trial court may allocate parenting time substantially to father under the endangerment standard, it may not completely deny mother parenting time under the best interests standard without express consideration of whether doing so is the least detrimental alternative. This consideration is especially important because of a parent's fundamental, constitutional right to maintain a relationship with his or her children. See People in Interest of A.R.D., supra, 43 P.3d at 635 (citing Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)); see also In re Marriage of Ciesluk, 113 P.3d 135, 142 (Colo.2005) (citing Troxel, court notes that in relocation cases a minority time parent has an important constitutional right to the care and control of the child); In re Maricopa County Juvenile Action No. J.D.-5312, supra (parent should be denied the right of visitation only under extraordinary circumstances); Frail v. Frail, 54 Ill.App.3d 1013, 12 Ill.Dec. 680, 370 N.E.2d 303 (1977) (only very extreme circumstances require and allow the trial court permanently to deprive a parent of visitation).

160 P.3d 334

        Further, in an extensive, longitudinal study in Colorado, parental alienation has been found to occur in twenty percent of cases involving custody and parenting time. Kopetski, supra. Thus, without consideration of the least detrimental alternative, there is the potential in a significant number of dissolution of marriage cases for the entry of parenting time orders denying all contact between a parent and his or her children.
        Here, the trial court was entitled to rely on the findings of the parental evaluator that mother was suffering from a delusional disorder and that the two older children had been enmeshed in mother's battle against father, among other findings. However, as the trial court noted, mother's therapist testified that mother was a "stellar" mother, and another expert testified on behalf of mother that the children were credible in stating that they had been physically abused by father and wanted to spend the majority of time with mother. Especially in a highly contentious proceeding such as this, the trial court was obliged to consider some limited contact between mother and the children under the concept of the least detrimental alternative. This consideration is particularly necessary where the court noted that father sought to reduce mother's parenting time to limited supervised parenting time for six months to one year, but he did not seek to deny mother parenting time completely.
        Accordingly, on remand, the trial court should consider, as appropriate, options such as supervision of parenting time by the county or district welfare department or the court's probation department, under Â§ 14-10-130(2), C.R.S.2006; appointment of a qualified domestic relations decisionmaker with binding authority to resolve disputes, under Â§ 14-10-128.3, C.R.S.2006; appointment of an arbitrator under Â§ 14-10-128.5, C.R.S.2006; and the resumption of therapeutic parenting time. However, after expressly considering whether cessation of all contact is the least detrimental alternative, the trial court may nonetheless again determine that mother should have no parenting time with her children.

C. Allowance of Parenting Time Only Upon Consent of Father

        Mother next contends that the trial court erred in ruling that she could not have any contact whatsoever with the children in any form, "unless she has signed, written permission from [father] that is specific with regard to the child or children and date, time and place." We agree.
        Several divisions of this court have held that a trial court may not delegate decisions regarding the exercise of parenting time to a third party because such decisions must be made by the court. See In re Marriage of Dauwe, 148 P.3d 282 (Colo.App.2006)(parenting coordinator may not be given authority to resolve differences between parents when they cannot agree); In Interest of D.R.V-A., 976 P.2d 881 (Colo.App.1999) (trial court may not delegate decisions regarding parenting time to guardian ad litem); In re Marriage of McNamara, supra (same); In re Marriage of Elmer, 936 P.2d 617 (Colo.App.1997)(error for trial court to delegate to psychiatrist authority to determine whether to permit overnight visitation).
        In our view, the reasoning of these cases applies to the delegation of parenting time decisions to one parent (a second party) when the issue of parenting time is fiercely contested, as here.
        We conclude that the trial court's delegation to father of the decisions regarding mother's exercise of parenting time was improper. Here, the trial court stated, "[T]his court expects [father] to act in the children's best interests and to allow such contact between the children and their mother as is appropriate and positive. The court expects [father] to utilize the advice and counsel of appropriate professionals in making these decisions."
        However, given the contentious nature of this case, the trial court should not have delegated to father the decisions regarding mother's exercise of parenting time, even if father were to rely on professionals for reasonable advice in this regard.
        In sum, we conclude that the trial court erred in completely denying mother any parenting time and any contact whatsoever with

160 P.3d 335

the children without expressly considering the least detrimental alternative aspect of the best interests standard and that the court further erred in delegating to father discretion to determine whether mother could exercise any parenting time.

IV. Decision-Making Responsibility

        Mother argues that circumstances justifying modification of the allocation of decision-making did not exist in this case. We disagree.
        Under Â§ 14-10-131(2), C.R.S.2006, as relevant here:
        [T]he court shall not modify . . . a decree allocating decision-making responsibility unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child . . . or party to whom decision-making responsibility was allocated and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the allocation of decision-making responsibility established in the prior decree unless [the court finds one of the circumstances set forth in Â§ 14-10-131(2)(a)(c), C.R.S.2006].
        Under Â§ 14-10-131(2)(c), the allocation of decision-making responsibility may be modified if the court determines that the retention of the existing allocation would "endanger the child's physical health or significantly impair the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child."
        When there is record support for the trial court's findings, its resolution of conflicting evidence is binding on review. In re Marriage of Bowles, 916 P.2d 615 (Colo.App. 1995).
        We note first that it is not clear from the record presented on appeal that there was a modification of decision-making. Under the terms of the September 2001 order, father was allocated sole decision-making responsibility for the children. Although parenting time was modified in July 2002 after mediation, it appears that decision-making was not addressed at that time. Mother asserts that under the terms of "the modification of August of 2003," father was required to consult with her regarding major decisions, but she has not directed our attention to the location of this order in the record, and we have not been able to confirm its existence. Thus, it appears that in allocating sole decision-making responsibility to father in December 2004, the court may have merely confirmed the existing arrangement. If so, we need not consider mother's contention that circumstances did not justify a change in the allocation of decision-making.
        Even if, as mother contends, decision-making responsibility was modified in the December 2004 order, we are not persuaded that the court abused its discretion in finding that the circumstances justified such a modification.
        Here, conflicting evidence was presented to the court regarding mother's parenting skills and the reasons for the children's emotional distress. Although some witnesses praised mother and attributed the children's distress to their desire to spend more time with her, the report of the parenting evaluator and other evidence in the record indicated that mother's distorted views and delusional beliefs regarding father fueled the ongoing conflict between the parents and enmeshed the children in that conflict to their detriment. The parenting evaluator reported, and the court found, that every attempt to resolve the problem had failed, and that under the existing parenting time plan, mother continued to endanger the children. Based on these findings, the court concluded that mother's contact with the children should be curtailed and that father should have sole decision-making responsibility.
        Because the court's findings are supported by the record, its resolution of the conflicts in the evidence regarding mother's parenting skills and the cause of the children's distress is binding on review. Because the children's distress was ongoing, and evidence presented to the court was sufficient to support the court's conclusion that mother's behavior continued to endanger their emotional development, the court reasonably could conclude,

160 P.3d 336

on the basis of facts that had arisen since the prior decree, that mother's involvement with the children should be restricted. Having reached this conclusion, the court also reasonably allocated sole responsibility for decision-making to father.

V. Contentions Raised in Reply Brief

        Mother contends that her constitutional rights to freedom of religion and association have been violated, together with her right to a family relationship with her children. Because the only argument offered in support of these contentions is found in mother's reply brief, we will not address it. See In re Marriage of Smith, 7 P.3d 1012 (Colo.App.1999)(argument raised in reply brief is not properly before the court).
        For the same reason, we will not address mother's contention that father's motion did not comply with the Uniform Dissolution of Marriage Act in that father failed to submit an affidavit as required in Â§ 14-10-132, C.R.S.2006.
        The order is reversed to the extent it denies mother all contact with the children and to the extent it allows mother to have parenting time only with father's consent, and the case is remanded for further proceedings consistent with this opinion. The order is affirmed in all other respects.
        Judge VOGT and Judge TERRY concur.