23CA1708 Marriage of Byarlay 09-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1708
Weld County District Court No. 12DR787
Honorable Anita Crowther, Judge

In re the Marriage of

Shad Harold Byarlay,

Appellee,

and

Rachael Tippmann,

Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUDGE KUHN
Gomez, J., concurs
Tow, J., dissents

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

Choice City Family Law, LLC, Desiree Gray, Fort Collins, Colorado, for Appellee

Rachael Tippmann, Pro Se

¶ 1    In this post-dissolution of marriage proceeding involving Shad Harold Byarlay (father) and Rachael Tippmann (mother), mother appeals the district court's order granting father's motion to relocate with the parties' child and modifying the allocation of parental responsibilities. We affirm.

## I.    Background

¶ 2    The parties divorced in 2013 and have one child. Under the permanent orders, the parties shared decision-making responsibilities and were equally allocated parenting time, although mother was designated the primary residential parent for purposes of enrolling the child in school. The initial allocation of parental responsibilities was later modified to award father decision-making responsibility for the child's education. At that time, father was also designated the child's primary residential parent for schooling purposes, although the parties maintained an equal allocation of parenting time.

¶ 3    In 2021, mother filed a motion to modify parenting time and decision-making responsibilities. She sought sole decision-making responsibilities, asked to be redesignated the primary residential parent, and sought to reduce father's parenting time to every other

weekend. Mother also moved for temporary orders modifying parenting time and decision-making responsibilities. While mother's motions were still pending, father moved to relocate with the child from his current residence in Lyons to Grand Junction, because he had obtained a new job in Grand Junction.

¶ 4 The district court entered temporary orders providing that father would have parenting time every weekend until his relocation to Grand Junction, and then significant telephone and video call parenting time after that. Roughly six months later, in March 2023, father amended his motion to relocate. He indicated that he had not been able to remain in Grand Junction due to circumstances beyond his control, and instead, he had already relocated to Burlington, where he had family.

¶ 5 Following a hearing, the court granted father's motion on August 7. The court found that it was in the child's best interests to relocate with father to Burlington for the start of the 2023 school year. Accordingly, the court ordered that during the school year, the child would reside primarily with father in Burlington, with mother receiving parenting time every other weekend. The court left

its existing allocation of decision-making responsibilities unchanged.

## II.    Discussion

¶ 6    As an initial matter, we address the dissent's position that we lack subject matter jurisdiction to consider mother's appeal because her notice of appeal was not timely filed.  Under C.A.R. 4(a)(1), mother was required to file her appeal of the court's August 7 order within forty-nine days of its entry.  Yet, as the dissent notes, she filed her notice of appeal roughly eight days after this deadline had expired.

¶ 7    This court ordered mother to show cause why her appeal should not be dismissed as untimely and ordered her to provide a copy of the order she was appealing.  Mother filed two documents on the same date in response, one titled "Motion to/for Relief from Adverse Action &/or Dismissal" and the other titled "Motion for stay of order and writs while pending appeal[, and] Motion for extension of time."  In the first document, she described how the copy of the order she had sent to this court had been returned by the post office as undeliverable.  She included a copy of the envelope demonstrating that fact.  She also asserted that the welfare and

3

safety of the child was at risk, the child was endangered by the order, and the appeal was urgent. In the second document, she described her own medical diagnosis and asserted generally that the trauma of the case affected her ability to meet strict deadlines. After receiving those filings, a motions division of this court discharged the order to show cause and permitted the appeal to move forward.

¶ 8    It's true that we're not bound by a motions division's ruling. *Chavez v. Chavez*, 2020 COA 70, ¶ 13. But we generally will not revisit a motions division's ruling on an issue unless the ruling raises serious questions about our own jurisdiction. *FSDW, LLC v. First Nat'l Bank*, 94 P.3d 1260, 1262 (Colo. App. 2004); *see also Parker v. USAA*, 216 P.3d 7, 10 (Colo. App. 2007), *aff'd*, 200 P.3d 350 (Colo. 2009). Because we discern no such serious questions on this record, we decline to nostra sponte reconsider the motions division's decision to accept mother's untimely appeal.

¶ 9    But even though we won't dismiss mother's entire appeal outright, we note that some of her contentions are not properly before us for review. Mother asserts various errors related to multiple orders issued by the district court after the order granting

4

father's motion to relocate with the child. Specifically, she contends that the district court erred by issuing writs in aid of enforcement of the relocation order and that it would be improper for the court to hold her in contempt of that order.

¶ 10    In its show cause order, this court ordered mother to provide copies of any orders she sought to appeal in compliance with C.A.R. 3(d)(8). In response, mother indicated that she was only appealing the August 7, 2023, order permitting relocation. Further, she could not yet have sought review of the contempt proceedings considering that the court hasn't issued a final "order deciding the issue of contempt and sanctions." C.R.C.P. 107(f); *see also* C.A.R. 1 (stating that an appeal may be prosecuted only from a final, appealable judgment or order). Accordingly — given this court's earlier order and mother's response — we decline to consider mother's contentions of error as to these later issues.

¶ 11    We will therefore consider only mother's numerous challenges to the district court's order granting father's motion to relocate with the child and modifying the allocation of parental responsibilities. And because we disagree with those challenges, we affirm the order.

## A. Applicable Legal Standards

¶ 12    Section 14-10-129(2)(c), C.R.S. 2024, establishes the procedure that the court must follow in deciding a majority or equal parent's post-decree motion to relocate. *In re Marriage of Ciesluk*, 113 P.3d 135, 140-42 (Colo. 2005); *In re Marriage of DeZalia*, 151 P.3d 647, 650 (Colo. App. 2006). The court must consider the best interest factors in section 14-10-124(1.5)(a), C.R.S. 2024, and the relocation factors in section 14-10-129(2)(c) when evaluating the child's best interests as well as the parents' interests relative to the requested relocation. *See Ciesluk*, 113 P.3d at 140, 142.

¶ 13    The court must begin its analysis with each parent on equal footing and may not presume either that a child is better off or disadvantaged by relocating with the moving parent. *Id.* at 147. Each parent has the burden to persuade the court that the relocation would be in, or contrary to, the best interests of the child. *Id.* at 148. The court must disclose the reasons for its decision and make specific findings with respect to the relevant statutory factors. *Id.* at 148, 150; *see also* § 14-10-129(2)(c); C.R.C.P. 52 (district court shall "set forth the findings of fact and conclusions of law which constitute the grounds of its action"). The court need not

6

make specific findings on every statutory factor, although there must be some indication that the court considered the pertinent factors. *People in Interest of A.M.K.*, 68 P.3d 563, 566 (Colo. App. 2003).

¶ 14 We review the court's relocation decision for an abuse of discretion, *see Ciesluk*, 113 P.3d at 148, meaning that we will not disturb the decision unless it is manifestly arbitrary, unreasonable, or unfair, *In re Marriage of Gibbs*, 2019 COA 104, ¶ 8. We exercise every presumption that supports upholding the court's decision. *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007). We review de novo, however, whether the court applied the proper legal standard. *See In re Marriage of Morgan*, 2018 COA 116M, ¶ 7.

### B. Application of Incorrect Legal Standards

¶ 15 Because mother appears pro se, "we liberally construe [her] filings while applying the same law and procedural rules applicable to a party represented by counsel." *Gandy v. Williams*, 2019 COA 118, ¶ 8. Accordingly, we seek to effectuate the substance, rather than the form, of her briefing. *See People v. Cali*, 2020 CO 20, ¶ 34. We won't, however, rewrite her arguments or act as an advocate on her behalf. *See Johnson v. McGrath*, 2024 COA 5, ¶ 10.

¶ 16    As we understand it, mother argues that the district court erred by failing to treat her as the majority-time parent in evaluating father's relocation request and erred by otherwise failing to apply the legal standards set forth in sections 14-10-124 and 14-10-129.  We discern no error.

¶ 17    In finding that relocation was in the child's best interests, the court first considered father's reasons for relocating with the child, including the presence of both father's employer and extended family in Burlington.  The court also considered father's testimony that the child would attend Burlington High School, which had a 99% graduation rate, and then weighed mother's objection to the relocation given that the child also had friends and family in Loveland, where mother resided.

¶ 18    In assessing the statutory best interests factors, the court found that mother had "actively prevented and discouraged [the child] from having a relationship with [f]ather," and, despite a previous warning from the court, mother had withheld parenting time from father and repeatedly disregarded the parenting time orders.  Accordingly, the court concluded that "[m]other ha[d] zero

8

ability to encourage the sharing of love, affection, and contact between the child and the other party."

¶ 19 Moreover, the court expressed concern that while in mother's care, the child "hardly attend[ed] school," having missed over three hundred class periods during mother's parenting time the prior school year. The court further observed that "[m]other has struggled to get the child to school and with school attendance since the child was in kindergarten" and expressed fear that "without a significant change, [the child] will not graduate high school." Even though the court had previously warned her about the importance of school attendance, the court further found that "[m]other ha[d] no plan to get the child to school or work on [the child's] attendance."

¶ 20 Given these detailed findings, we reject mother's assertion that the court failed to apply sections 14-10-124 and 14-10-129. While the court did not make explicit findings as to every statutory factor, it was not required to, *see A.M.K.*, 68 P.3d at 566, and we are otherwise satisfied that the court considered the relevant statutory factors in sections 14-10-124(1.5)(a) and 14-10-129(2)(c) when allowing father to relocate with the child and implementing a new

parenting time schedule. Moreover, there is no indication that the court applied any improper presumption in father's favor as opposed to placing an equal burden on each party in resolving the relocation issue. *See Ciesluk*, 113 P.3d at 148 (recognizing that the court erred by denying a motion to relocate when it prematurely concluded that the parties should remain in close proximity to each other).

¶ 21 Mother also argues that the court failed to consider the child's wishes as required by section 14-10-124(1.5)(a)(II). But because we lack a transcript of the relocation hearing, we are unable to ascertain to what extent the parties presented any information on that factor and therefore must assume that the court's order was supported by the record. *See In re Marriage of Dean*, 2017 COA 51, ¶ 15 (where an appellant does not provide a sufficient record demonstrating that the district court erred, we must presume that the record supports the court's judgment).

¶ 22 Finally, we reject mother's argument that she was the majority-time parent, and therefore, the court erred by allowing father's motion to relocate to proceed based on a finding that the parties equally shared parenting time. Mother's contention is

contradicted by the most recent permanent parenting time order, which designated father as the primary residential parent for schooling purposes and maintained an equal allocation of parenting time. Although the court entered temporary orders reducing father's parenting time during his initial relocation to Grand Junction, the temporary orders unambiguously stated that they would not prejudice either party as to the resolution of the parties' other outstanding motions. *See* § 14-10-108(5)(a), C.R.S. 2024 (providing that temporary orders do "not prejudice the rights of the parties or the child which are to be adjudicated at subsequent hearings in the proceeding"). And to the extent that mother was at times effectively the majority-time parent because, as the court found, she had been withholding father's parenting time, mother has not directed us to any legal authority suggesting that a parent may obtain majority-time status by refusing to follow the existing parenting time orders.

C.     Mother's Remaining Contentions of Error

¶ 23     Our review of mother's multiple remaining contentions of error is severely hampered by the lack of a complete record. Specifically, we lack a transcript of the April 2023 hearing that addressed

11

father's motion to relocate and mother's competing motion to modify parenting time and decision-making responsibilities. Likewise, we lack transcripts of the multiple status conferences and pretrial readiness conferences preceding that hearing, during which mother asserts that various errors also occurred.

¶ 24    As the appellant, it was mother's responsibility to designate the record and to ensure that all items designated were transmitted to the appellate court. *See In re Marriage of Tagen*, 62 P.3d 1092, 1096 (Colo. App. 2002). Therefore, mother was required to "include in the record transcripts of all proceedings necessary for considering and deciding the issues on appeal."[1] C.A.R. 10(d)(3). Where an appellant fails to include the necessary portions of the

---

[1] We acknowledge mother's assertion that, being indigent, she attempted but couldn't afford to purchase the transcripts. We also recognize that it was beyond the district court's authority to waive the fees associated with obtaining them. *See* Chief Justice Directive 98-01, Costs for Indigent Persons in Civil Matters, § III (amended Apr. 2024). Nonetheless, we note that under C.A.R. 10(e), the parties could have agreed to submit a statement of the evidence or proceedings in lieu of designating transcripts with the district court. There is no indication that mother tried to utilize this alternative avenue to provide a record of the proceedings. Regardless, her efforts in this regard do not relieve her of her obligation to provide transcripts for our review.

record, we must presume that the missing record supports the judgment. *See Dean*, ¶ 15; *cf. People v. Wells*, 776 P.2d 386, 390 (Colo. 1989) (reviewing court cannot conclude that the district court's judgment is erroneous when the record is insufficient).

¶ 25 Likewise, mother has failed to include relevant citations to the record in her briefing, and she has not included relevant dates or other information that would allow us to readily locate her numerous alleged errors. *See* C.A.R. 28(a)(7)(A)-(B) (requiring an appellate brief to cite "the precise location in the record where the issue was raised and where the court ruled" and include "citations to the authorities and parts of the record on which the appellant relies" when presenting the appellant's arguments). And it is not otherwise our duty as the reviewing court "to search the record for evidence to support" her arguments. *Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo. App. 1996), *aff'd*, 940 P.2d 348 (Colo. 1997). Moreover, "[a]rguments not presented at trial cannot be raised for the first time on appeal," *In re Marriage of Ensminger*, 209 P.3d 1163, 1167 (Colo. App. 2008), and without relevant transcripts and citations to the record, we are

unable to ascertain what arguments and information mother presented to the court in the course of the proceedings.

¶ 26     Similarly, many of mother's remaining contentions represent bald assertions of error, presented without any supporting legal authority or argument. *See People in Interest of R.J.B.*, 2021 COA 4, ¶ 35 (declining to consider a bald legal proposition presented without argument or development); C.A.R. 28(a)(7)(B). And while we acknowledge that mother is pro se, a party's pro se status does not excuse a party from complying with the appellate rules. *See Gandy*, ¶ 8; *see also Cornelius v. River Ridge Ranch Landowners Ass'n*, 202 P.3d 564, 572 (Colo. 2009) (court may take into account that the party is pro se but pro se parties are bound by same rules as attorneys).

¶ 27     Given these numerous deficiencies, we presume that the record supports the district court's order concerning mother's remaining contentions of error, and otherwise decline to consider her undeveloped arguments, regarding the following matters:

- the court's service of various pleadings on her;
- the reassignment of the case to a different district court judge;

- the leeway afforded to father in responding to mother's motion to modify parenting time and decision-making responsibilities;

- mother's request to interview the child in chambers;

- the court's refusal to let the child testify at the hearing;

- the dismissal of a child's legal representative that the court appointed to represent the child;

- the application of section 14-10-127.5, C.R.S. 2024; and

- the court's child support order.

¶ 28   We similarly decline to address the numerous arguments that appear for the first time in mother's lengthy reply brief, and we otherwise may not consider the multiple documents that mother attached to her opening brief. *See In re Marriage of Herold*, 2021 COA 16, ¶ 14; *In re Marriage of Drexler*, 2013 COA 43, ¶ 24; *cf. Schempp v. Lucre Mgmt. Grp., LLC*, 75 P.3d 1157, 1164-65 (Colo. App. 2003) (declining to address contention of error that, while mentioned in opening brief, was not supported with legal authority or adequately argued until the reply brief).

## III. Disposition

The order is affirmed.

JUDGE GOMEZ concurs.

JUDGE TOW dissents.

JUDGE TOW, dissenting.

¶ 30    While I agree with the majority's entire analysis, I must nevertheless dissent, as I believe we lack jurisdiction to address this appeal.

¶ 31    The district court issued the order being appealed on August 7, 2023. The notice of appeal was filed on October 3, 2023 — fifty-seven days later. An appeal must be filed no later than forty-nine days after the date of the order being appealed. C.A.R. 4(a)(1). We will accept an untimely notice of appeal if the filing party can demonstrate that the deadline was missed due to excusable neglect. C.A.R. 4(a)(4). "The timely filing of a notice of appeal is a jurisdictional prerequisite for appellate review." *In re Marriage of James*, 2023 COA 51, ¶ 8.

¶ 32    I recognize that this court ordered mother to show cause why the appeal should not be dismissed as untimely, and that after her response to that show cause order a motions division of this court discharged the show cause and permitted the appeal to proceed. But I cannot discern the basis for the motions division's decision. Mother's show cause response provided no justification for her late filing; instead, it merely asserted — in conclusory fashion — that

17

the appeal was "urgent" and that the child was endangered. (Indeed, if the appeal was truly urgent and the child endangered, one would think that would spur *earlier* action by mother, not a delay in filing.)

¶ 33     The majority notes that mother filed another document along with her response to the show cause order, in which she mentioned that she struggles with deadlines due to her mental health and the trauma of this case. But that document was a motion for extension of time to file the opening brief and a request to stay the trial court's orders pending appeal. At no time did mother tie her struggles with deadlines to her failure to timely file the appeal. Even liberally construing this document, I simply cannot read it as being proffered as an explanation for why her appeal was not timely filed. *See Minshall v. Johnston*, 2018 COA 44, ¶ 21 (Liberal construction of a pro se party's pleadings "does not include inventing arguments not made by the pro se party.").

¶ 34     We are not bound by a motions division's prior order, particularly where there are "serious questions regarding our own jurisdiction." *Riggs Oil & Gas Corp. v. Jonah Energy, LLC*, 2024 COA 57, ¶ 72 (quoting *FSDW, LLC v. First Nat'l Bank*, 94 P.3d 1260,

1262 (Colo. App. 2004)). In my view, there is not only a serious question whether we have jurisdiction, but a clear indication that we do not. The appeal, therefore, should be dismissed without reaching the merits.

¶ 35    Accordingly, I dissent.