24CA2087 Parental Resp Conc BMJA 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2087
El Paso County District Court No. 23DR32133
Honorable Marcus S. Henson, Judge

---

In re the Parental Responsibilities Concerning B.M.J.A., a Child,

and Concerning Jason Aguinaga,

Appellee,

and

Rosemary Aguinaga,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Hawthorne* and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

The Drexler Law Group, LLC, Matthew B. Drexler, Teresa A. Drexler, M. Addison Freebairn, Colorado Springs, Colorado, for Appellee

Heritage Family Law, LLC, Jarod C. Harsha, Broomfield, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1 In this allocation of parental responsibilities case involving Rosemary Aguinaga (mother) and Jason Aguinaga (father), mother appeals the district court's judgment allocating parenting time. We affirm.

## I. Relevant Facts

¶ 2 The parties have four children, including one daughter, B.M.J.A., born in 2015, who is the subject of this appeal.

¶ 3 In its 2024 permanent orders, the district court ordered that B.M.J.A. primarily reside with father in Colorado. By doing so, the court denied mother's request to be designated B.M.J.A.'s primary parent in Nevada, instead granting her parenting time during summers, school breaks, and certain holidays.

## II. Allocation of Parenting Time

### A. Standard of Review

¶ 4 We review a district court's parenting time determination for an abuse of discretion, meaning that we will not disturb the court's decision unless it is manifestly arbitrary, unreasonable, or unfair. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 45. We also apply every presumption in favor of upholding the court's decision. *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007).

1

¶ 5     We review de novo whether the district court applied the proper legal standard. *In re Marriage of Morgan*, 2018 COA 116M, ¶ 7.

## B.     Governing Law

¶ 6     When, as here, a parent asserts an intent to relocate before the entry of permanent orders, the district court must accept that intent and determine a parenting time allocation that serves the child's best interests. *See Spahmer v. Gullette*, 113 P.3d 158, 161-64 (Colo. 2005) (district court must fashion a parenting plan that can be exercised with the parties living in different states, if that is their stated intention); *see also Morgan*, ¶ 17 (district court must allocate parenting time in accordance with the child's best interests); § 14-10-124(1.5)(a)(VIII), C.R.S. 2025 (district court must consider "[t]he physical proximity of the parties to each other as this relates to the practical considerations of parenting time"). In making that determination, the court must consider "all relevant factors," including those listed in section 14-10-124(1.5)(a). *In re Marriage of Collins*, 2023 COA 116M, ¶ 7. At this stage, the parties are on equal ground, and each parent is as likely as the other to

become the primary residential parent under the best interests analysis. *See Spahmer*, 113 P.3d at 163.

¶ 7     On the other hand, when a parent seeks to relocate after the entry of permanent orders, a district court must apply a more stringent standard under section 14-10-129(2)(c), C.R.S. 2025, which accounts for the vested parenting time rights established by the prior order. *Spahmer*, 113 P.3d at 161, 163; *see In re Marriage of Ciesluk*, 113 P.3d 135, 140 (Colo. 2005). This standard requires consideration of the best interests factors plus nine additional statutory factors specific to relocation modifications. *See Spahmer*, 113 P.3d at 163 ("[T]he goal of dissolution proceedings is to create a stable situation between the new family units arising out of the divorce, whereas the goal of a modification proceeding is to maintain this stability, if possible, in the best interests of the child.").

¶ 8     Discussion

¶ 9     Mother contends that the district court misapplied the law when it named father B.M.J.A's primary parent in Colorado. To get there, she says that she was not on equal ground as the court treated her request to move with the child to Nevada as if it were a

modification of an existing order under section 14-10-129(2)(c) instead of an initial allocation of parenting time under section 14-10-124. We disagree.

¶ 10 The district court began its analysis by recognizing that there was no prior order in place and emphasizing that both parties had an equal opportunity to exercise appropriate parenting time consistent with B.M.J.A.'s best interests:

> The course of this hearing has been one where not only have I considered the issue of just kind of the standard aspect of allocation of parental responsibilities under 14-10-124, but I've also had to deal with kind of some of the various things related to the fact that [mother] in the very near term is proposing a relocation for that child, but it's not a relocation hearing because we have not yet had any sort of decree regarding allocation entered at this point for this child. So this is not one of those situations where there is some sort of higher burden to establish a shift from one parent or the other being a primary residential parent or anything along those lines, but I think it's instructive to take into account that the request does involve some aspects of impacting adjustment of the child to the current environment versus a new environment and having to determine whether or not that's something that maybe does or does not weigh in favor of the requested relocation of the child if I were to, for instance, to adopt what's being requested by . . . mother. So taking that into account, I'll begin by observing that 14-10-124

4

kind of generally has a statutory policy favor that really is focused on trying to establish frequent and continuing contact with both parents if it can be done without any sort of endangerment of the child. So really what that amounts to is the idea of trying to make sure that both parents are afforded appropriate opportunity to have a loving, nurturing, nourishing relationship with the child in a way that is beneficial to the child, again, without endangering the child in some way. So when I consider that overarching factor and then I look at the various factors statutorily that are laid out[.]

See *In re Marriage of Thorburn*, 2022 COA 80, ¶ 9 n.1 (district court's oral findings supplement its written order).

¶ 11     Then, the district court carefully considered the section 14-10-124 best interests factors and found the following:

- Mother wanted to be B.M.J.A.'s primary parent in Nevada. *See* § 14-10-124(1.5)(a)(I) (directing the district court to consider the parents' wishes).

- Father opposed the relocation and wanted to be B.M.J.A.'s primary parent in Colorado. *See id.*

- There was no extensive evidence about B.M.J.A.'s preference on parenting time. *See* § 14-10-124(1.5)(a)(II)

(directing the district court to consider the child's wishes).

- "Historically, both parties have tried to meet [B.M.J.A.'s] needs and really do a lot for her in a positive way." *See* § 14-10-124(1.5)(a)(III) (directing the district court to consider the interaction and interrelationship of the child with their parents, siblings, and any other person who may significantly affect their best interests). Mother provided consistent day-to-day care and maintained routines. Father, especially of late, had become much more engaged. He helped the child with schoolwork, and they spent time fishing, gardening, and ice skating together. "[T]he two of them [were] building a much stronger bond."

- B.M.J.A. also had a strong bond with her adult siblings, especially her older brother who was actively involved, helpful, and fun. *See id.* Such a supportive sibling relationship was "significantly beneficial and advantageous" for her.

6

- B.M.J.A. was "doing well" in a "nurturing" school environment, "socially engaged," and living next door to her best friend.  *See id.*; *see also* § 14-10-124(1.5)(a)(IV) (directing the district court to consider the child's adjustment to their home, school, and community).

- Mother credibly testified that Nevada offered potentially excellent school districts, but she provided no comparative evidence, and it would be difficult to predict how B.M.J.A. would adjust.  *See* § 14-10-124(1.5) (directing the district court to consider all relevant factors).

- Both parties accused the other of trying to undermine B.M.J.A.'s relationship with them.  *See* § 14-10-124(1.5)(a)(V) (directing the district court to consider the mental and physical health of all individuals involved).

- Allowing or encouraging B.M.J.A. to distance or alienate herself from either party would be detrimental and not in her best interests, and the parties "have some work to do in this regard."  *See* § 14-10-124(1.5)(a)(VI) (directing the

7

district court to consider each parent's ability to encourage the sharing of love, affection, and contact between the child and the other parent).

- Both parties, despite their disputes, have shown a commitment to prioritizing B.M.J.A.'s well-being and attempting to act in her best interests. *See* § 14-10-124(1.5)(a)(VII) (directing the district court to consider whether the parents' past pattern of involvement with the child reflects a system of values, time commitment, and mutual support).

- Father's past work demands limited his time with the children, but his recent decision to cut back his hours gave him more time with B.M.J.A. *See id.* He credibly testified that he now devotes substantial time to the child's needs and activities.

- If mother moves to Nevada, a long-distance parenting plan would be necessary. *See* § 14-10-124(1.5)(a)(VIII).

- Mother expressed concerns about the safety of father's neighborhood, but those concerns were uncorroborated, and there was no evidence suggesting that B.M.J.A. was

8

endangered. *See* § 14-10-124(1.5)(a) (district court allocates parenting time based on the child's best interests unless it finds that time with a parent would endanger the child's physical health or impair the child's emotional development).

¶ 12 Based on those findings, which have record support, the district court applied the correct legal standard — that is, it treated both parties equally — and concluded that it was in the child's best interests for father to be her primary parent in Colorado. *See Spahmer*, 113 P.3d at 164; *see also Thorburn*, ¶ 49 (it is for the district court, not the reviewing court, to determine the witnesses' credibility and the weight of the evidence). To the extent some findings also related to the section 14-10-129 factors specific to relocation modifications, the court was not precluded from considering those factors. This is because under a best-interests analysis, the court may consider any relevant factors, including those listed in section 14-10-129. *See* § 14-10-124(1.5)(a); *Collins*, ¶ 7.

¶ 13 Still, mother challenges the district court's finding that father had the ability to encourage the sharing of love, affection, and

9

contact between her and B.M.J.A., arguing that the court failed to adequately weigh her evidence of his disparagement and alienation. She points to testimony from the oldest daughter who described father's role in exacerbating the parties' rift, as well as father's own admission that he destroyed photographs of mother and labeled food to exclude her. She also maintains that her testimony shows that his behavior undermined her relationship with the children, including B.M.J.A. But her argument essentially asks us to reweigh the evidence, which we cannot do. *See Thorburn*, ¶ 49; *see also In re Marriage of Nelson*, 2012 COA 205, ¶ 35 (When reviewing for an abuse of discretion, even where "there is evidence in the record that could have supported a different conclusion, we will not substitute our judgment for that of the district court."); *In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989) (an appellate court may presume that the district court considered all of the evidence admitted).

¶ 14     Last, mother claims that the district court erred by "inconsistently" applying "evidentiary standards." She offers no supporting legal analysis. So, we decline to address the issue. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (an appellate court

10

may decline to consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *see also Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶ 40 (an appellate court will "decline to assume the mantle" when parties offer no supporting arguments for their claims).

¶ 15    In all, we cannot say that the district court exceeded its broad discretion by determining that B.M.J.A.'s best interests were better served by naming father her primary parent in Colorado. *See Pawelec*, ¶ 45.

### III.    Appellate Attorney Fees

¶ 16    Father requests appellate attorney fees under C.A.R. 39.1 and section 13-17-102, C.R.S. 2025, asserting that mother's appeal is substantially frivolous. Although unsuccessful, her contentions were not so lacking in merit as to constitute frivolity or bad faith. *See Mission Denv. Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984) ("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights."); *see also In re*

*Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases . . . ."), *aff'd*, 2019 CO 81.

## IV. Disposition

¶ 17     The judgment is affirmed.

JUDGE HAWTHORNE and JUSTICE MARTINEZ concur.