24CA1056 Marriage of Stevens 05-01-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1056
Boulder County District Court No. 12DR48
Honorable Timothy L. Johnson, Magistrate
Honorable Andrew Hartman, Judge

---

In re the Marriage of

Bethany Kay Stevens,

Appellee,

and

John Richard Stevens,

Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

---

Bethany Kay Stevens, Pro Se

John Richard Stevens, Pro Se

¶ 1    In this post-dissolution of marriage proceeding between John Richard Stevens (father) and Bethany Kay Stevens (mother), father appeals the order granting mother's motion to enforce parenting time under section 14-10-129.5, C.R.S. 2024.  We affirm.

## I.    Background

¶ 2    The district court dissolved father and mother's marriage in 2013.  In doing so, the court approved the parties' stipulated parenting plan providing that their only child would primarily reside with father and that mother would have the child "on Monday and Wednesday from 4:00 p.m. until 8:00 p.m. and every other Saturday from 8:00 a.m. until 8:00 p.m."

¶ 3    In 2021, mother moved to modify parenting time.  Those proceedings concluded with the district court approving the parties' stipulated amended parenting plan.  Under the amended plan, the parties agreed that mother would follow a step-up parenting schedule intended to gradually increase her parenting time with the child.  Consisting of five steps, mother would start with the parenting schedule that she had been following in accordance with the original plan and would progress to each next step after satisfying the terms of the previous step.  Upon reaching step five of

the schedule, she would have parenting time with the child every Wednesday for four hours and every other weekend beginning on Friday "after school or camp, or 4:00 p.m.," and "until 4:00 p.m. Sunday if the following Monday is not a school day, and until 12:00 p.m. Sunday if the following Monday is a school day."

¶ 4 However, under paragraph 7 of the amended plan, mother had to comply with certain conditions to advance between the steps and avoid demotion to the baseline step one schedule. The relevant conditions included the following:

> b. Mother shall respond to communications regarding the child in a timely manner (defined as a response or acknowledgement within [forty-eight] hours). . . .
>
> c. Mother shall engage in weekly therapy with a state licensed mental health provider. Mother shall provide a release to the therapist and the therapist must be willing to provide written confirmation to [f]ather that [m]other is consistently and steadily attending weekly therapy and complying with any prescribed or recommended treatment plans. If in the future [m]other and her therapist believe that [m]other no longer needs weekly therapy, [m]other will provide to [f]ather written verification from her therapist and the parties will discuss and attempt to agree as to whether continued therapy is necessary. If the parties do not agree, then [m]other may seek [c]ourt

2

[o]rders concerning the issue of ongoing therapy . . . .

Paragraph 7(e) provided that if mother failed to comply with any of these conditions, her parenting time would "move back to or remain on [s]tep [one] until [she was] compliant with the conditions for a period of [thirty] consecutive days," before she could again start progressing through the steps in order.

¶ 5 In November 2023, mother filed an "Emergency Motion Concerning Parenting Time Disputes Pursuant to [Section 14-10-129.5]," asserting that father had been withholding parenting time from her to which she was entitled under step five of the amended plan. Specifically, she argued that father had improperly moved her from step five to step one a month earlier on the grounds that she had violated paragraph 7 of the plan by failing to (1) provide certain information regarding her mental health therapy and (2) respond within forty-eight hours to one of father's messages. Mother further argued that father had engaged in a pattern of inappropriately moving her down to lower steps in the parenting plan. She requested makeup parenting time as a remedy for father's alleged noncompliance.

3

¶ 6    A magistrate held an evidentiary hearing in February 2024, at which both parties appeared pro se.  Roughly one month later, the magistrate issued an order granting mother's motion after finding that father had violated the amended parenting plan "by restricting [m]other's parenting time without cause and depriving her of her four monthly overnights with the [child]."  The magistrate awarded mother twenty-two overnights in makeup parenting time.  As a further remedy, the magistrate modified the amended plan, as permitted by section 14-10-129.5(2)(b).  Among other changes, the magistrate removed paragraph 7(e), ordered mother to attend therapy as recommended by her therapist instead of every week, and removed the step-up plan.  In its place, the magistrate ordered that mother must exercise her parenting time under a schedule that was *similar* to the schedule that she had followed until father's violation.[1]

---

[1] Specifically, following the magistrate's modifications, mother's regular parenting schedule differed from the schedule under step five to the extent that "[i]f [m]other is exercising parenting time during the school year and there is no school on Monday, [her] parenting time shall be extended until 4:00 p.m. on Monday (allowing an extra overnight)."

4

¶ 7 Father then filed a petition for review of the magistrate's decision under C.R.M. 7(a). The district court denied the petition, thereby adopting the magistrate's order, and father appeals.

## II. Analysis

¶ 8 Because both parties appear pro se in this appeal, "we liberally construe [their] filings while applying the same law and procedural rules applicable to a party represented by counsel." *Gandy v. Williams*, 2019 COA 118, ¶ 8. Accordingly, we seek to effectuate the substance, rather than the form, of their briefing. *People v. Cali*, 2020 CO 20, ¶ 34. We won't, however, rewrite their arguments or act as an advocate on their behalf. *Johnson v. McGrath*, 2024 COA 5, ¶ 10.

¶ 9 As we understand it, father contends that the magistrate erred in granting mother's motion under section 14-10-129.5 by (1) determining that father had violated the parenting time order in part because he had impermissibly restricted mother's parenting time when he changed mother's schedule from step five to step one; (2) failing to consider the best interests of the child; (3) allowing mother's therapist to opine on matters about which she had lacked the requisite knowledge; (4) finding that father had admitted to

filing a complaint with the Colorado Department of Regulatory Agencies (DORA) against the therapist that resulted in her discipline; and (5) miscalculating mother's makeup parenting time.[2] We consider each of these contentions in turn.

## A.  Standard of Review

¶ 10  A district court reviewing a magistrate's decision under C.R.M. 7(a) may not alter the magistrate's factual findings unless they are clearly erroneous.  C.R.M. 7(a)(9).  Our review of the district court's decision is effectively a second layer of appellate review.  *In re Marriage of Thorburn*, 2022 COA 80, ¶ 25.  Thus, like the district court, we must accept the magistrate's findings of fact unless they

---

[2] Father raises two additional issues in his briefing.  First, he asserts that the magistrate erred by admitting, over his objection, "exhibits that had not properly been served by [C.R.C.P. 5]."  But he doesn't offer legal authority in support of this argument and generally fails to develop it sufficiently to enable our review.  And we don't consider arguments that are unsupported and undeveloped. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, *aff'd*, 2021 CO 56.  Second, father argues that the magistrate erred by modifying the amended parenting plan because mother had failed to file a motion seeking to modify the plan before the hearing.  We disagree with that argument.  The court has the authority to modify a previous parenting time order to meet the best interests of the child following a hearing on a parenting time dispute.  *See* 14-10-129.5(2)(b), C.R.S. 2024.

are clearly erroneous and have no support in the record. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22.

¶ 11 The determination of parenting time is a matter within the discretion of the district court, and we will not disturb the court's decision absent a showing of an abuse of that discretion. *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007). "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication of the law." *In re Marriage of Bochner*, 2023 COA 63, ¶ 12.

¶ 12 However, we review de novo questions of law, including whether the court properly applied the correct legal standard or construed a statute. *Thorburn*, ¶ 26.

¶ 13 The party asserting an error has the burden of showing that the error wasn't harmless. *See Moody v. Corsentino*, 843 P.2d 1355, 1375 (Colo. 1993). An error is harmless if it "does not affect the substantial rights of the parties." C.R.C.P. 61. And an error affects a party's substantial rights "only if it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the [proceeding] itself."

*Stockdale v. Ellsworth*, 2017 CO 109, ¶ 32 (quoting *Laura A. Newman, LLC v. Roberts*, 2016 CO 9, ¶ 24).

### B.  Applicable Law

¶ 14    Section 14-10-129.5 governs the resolution of parenting time disputes.  Under that statute, a district court must determine "[w]ithin thirty-five days after the filing of a verified motion by either parent or upon the court's own motion . . . whether there has been or is likely to be substantial or continuing noncompliance with the parenting time order or schedule." § 14-10-129.5(1).  If the court finds after a hearing that a parent hasn't complied with a parenting time order, it may impose one or more remedial orders. § 14-10-129.5(2).  As pertinent here, those include an order modifying the previous parenting time order to meet the best interests of the child and an order requiring that makeup parenting time be provided to the aggrieved parent. § 14-10-129.5(2)(b), (d).

¶ 15    Before entering an order modifying parenting time under subsection (2)(b) of the statute, the court must consider all relevant factors to determine the best interests of the child, including the statutory factors set forth in section 14-10-124(1.5)(a), C.R.S. 2024.  In addition, when a court sanctions a noncomplying parent by

8

awarding makeup parenting time to the other parent, the makeup time must be of the same type and duration as the parenting time that was withheld. § 14-10-129.5(2)(d)(I).

## C. Preservation

¶ 16    As an initial matter, we address the issue of preservation because mother contends that we should decline to review father's unpreserved arguments that the magistrate erred by failing to consider the best interests of the child and allowing mother's therapist to opine on matters beyond the therapist's qualifications and knowledge.

¶ 17    To preserve an issue for our review, a party appealing from a magistrate's decision must raise the issue in a petition for review and give the district court an opportunity to correct any error the magistrate may have made. *See* C.R.M. 7(a)(7) (petition for review must state with particularity the alleged errors in the magistrate's order); *see also People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006) (declining to review an issue in a dependency and neglect proceeding when father failed to raise the issue in his petition for district court review of the magistrate's judgment); *In re Marriage of Ensminger*, 209 P.3d 1163, 1167 (Colo. App. 2008)

(declining to address an argument that the party didn't assert in her petition for review, raising it for the first time on appeal).

¶ 18    Father argues that the magistrate failed to consider the best interests of the child because the magistrate didn't address (1) the recommendations contained in the report from the child and family investigator (CFI)[3] and (2) the statutory factors set forth in section 14-10-124(1.5)(a).  Instead, father asserts, the magistrate incorrectly confined the best interests analysis to "the parent's conduct [that] would result in [a] situation endangering the child's physical health or significantly impair the child's emotional development."

¶ 19    As we understand his briefing, father argues that the magistrate incorrectly applied the child endangerment standard, disregarding the recommendations in the CFI report and the best interests considerations under section 14-10-124(1.5)(a).  However, the record shows that father didn't raise this argument to the magistrate or in his petition for district court review.  *See* C.R.M.

---

[3] The CFI report was prepared in 2021 in connection with the modification proceedings that resulted in the district court's adoption of the parties' amended parenting plan.

7(a)(7). Consequently, because this issue is unpreserved, we decline to address it further. *See K.L-P.*, 148 P.3d at 403.

¶ 20     Likewise, father failed to preserve in the district court his challenge to the therapist's statements. In support of this challenge, he directs us to a letter in which the therapist stated that based on her experience with father and the parents' communications, father was violating the parenting time order; he was "more interested in winning the power struggle than providing a healthy, co-parenting atmosphere for [the child]"; and father's conduct was detrimental to the child. Father argues that the magistrate "erred in treating those statements as credible" because the evidence established that the therapist didn't have the "credentials, training, certification, or authorization" to provide an opinion about any of these issues.

¶ 21     But the record shows that father didn't object to the admission of the letter during the hearing. Nor did he challenge the therapist's statements on the basis of her credentials or licensure. And father also didn't raise this issue in his petition for review. Under these

circumstances, this issue likewise isn't preserved for our review. We thus decline to address it further.[4] *See id.*

### D. Father's Failure to Comply with the Parenting Time Order

¶ 22    Father contends that the magistrate erred by determining that father violated the parenting time order when he changed mother's parenting schedule in accordance with paragraph 7(e) of the amended parenting plan.  He argues that (1) the record doesn't support the magistrate's finding that father improperly moved mother from step five to step one of the step-up parenting schedule, and (2) the magistrate erred by determining that father impermissibly restricted mother's parenting time.  We disagree with both contentions.

---

[4] In any case, father challenges the therapist's credibility and the weight the magistrate accorded to her statements, but those matters are within the magistrate's sole discretion.  *See In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003) (noting that credibility and weight of evidence determinations are matters within the sole discretion of the trial court).

### 1. The Magistrate Didn't Clearly Err by Finding that Father Violated the Parenting Time Order when He Changed Mother's Parenting Schedule Back to Step One

¶ 23    In the proceedings before the magistrate, the parties disputed mother's parenting time and her compliance with the conditions in paragraphs 7(b) and 7(c) of the amended parenting plan.  In his response to mother's motion, father argued that he was authorized to move mother's parenting time back to step one after (1) her therapist had failed to provide information regarding the length and location of mother's therapy sessions; and (2) mother had failed to respond within forty-eight hours to the following message that father had sent her on September 29, 2023: "It will mess up my schedule to bring [the child] to you on Monday[, October 2].  If I need to do that, I would like confirmation asap."

¶ 24    The magistrate disagreed with father, finding that when father informed mother that he would start following the parenting schedule under step one, mother was still in compliance with the plan.  Specifically, the magistrate found that mother had been attending weekly therapy and that she had "complied with the requirement of providing a release to her therapist so the therapist [could] provide information to [f]ather."  However, the magistrate

also found that father wasn't entitled to rest of the information he sought regarding the length and duration of therapy sessions under the plan's plain language.

¶ 25    As for the communication condition under paragraph 7(b), the magistrate stated that mother didn't timely respond to or acknowledge father's September 29 message and that her untimely response was technically a violation of the plan. However, he observed that this provision of the amended parenting plan violated section 14-10-129(1)(b)(I), C.R.S. 2024, because it amounted to an impermissible restriction on mother's parenting time, and regardless, father's message was an unnecessary communication to which mother didn't need to respond. In making the last finding, the magistrate noted that because the terms of the amended parenting plan set forth the parenting schedule and which parent was responsible for dropping off the child, it was unnecessary for mother to confirm these points with father.

¶ 26    The record supports the magistrate's finding that father violated the parenting time order by improperly changing mother's schedule under the step-up plan. As noted above, to comply with the therapy condition, mother was required to provide a release of

information (ROI) to her therapist, and the therapist was then obligated to inform father in writing that mother had been "consistently and steadily attending weekly therapy and complying with any prescribed or recommended treatment plans." The record shows that mother executed the ROI in August 2022, soon after she started seeing her therapist. It also shows that mother had been consistently attending weekly therapy and that her therapist had been emailing father every month with updates regarding the dates of mother's therapy sessions. While some updates specified that the sessions were one hour long, the magistrate correctly observed that the language of the parenting plan didn't require mother to provide information regarding the length and location of her therapy to comply with the condition in paragraph 7(c).

¶ 27 True, it's undisputed that mother didn't acknowledge father's September 29 message until October 2, one day late. However, the record doesn't support father's argument that this late response was the reason why he started to follow the parenting schedule under step one, "which meant the child was scheduled to be in [m]other's care from [4:00 p.m. to 8:00 p.m.] on Monday, October 2." As the magistrate noted, father had communicated to

15

mother that her parenting plan would revert to step one even before she was supposed to respond to the relevant message, on the grounds that she had failed to comply with the therapy condition in the plan.

¶ 28    For example, on September 26, father wrote to mother,

> I am giving you until Friday (September 29, 2023) to provide your therapist with the required ROI so she can verify the standard information I have requested: day, time, duration, and modality of sessions.  For July, August, and if we reach Friday before I receive these documents, for September [2023]. . . .
>
> If you do not provide the ROI to your therapist, and she does not verify your therapy session details, the plan says that you being out of compliance with those requirements means our plan reverts to Step 1.

¶ 29    Then, on September 29, mother sent father the following message: "You might have noticed I paid [child] support early.  This is because I'm going out of town, camping, and will likely be out of cell range.  So, if you send me a message between now and then[,] I won't be responding until after [October 1]."  Father responded, "Well, I need you to communicate about your therapy verification before then."  This exchange supports the magistrate's conclusion that when father attempted to bring the child to mother on October

16

2 for parenting time in accordance with the step-one schedule, he did so because he didn't receive the therapy information that he had requested, not because mother failed to timely respond to his message about why it was important for mother to confirm whether she would be sending that information.

¶ 30 And because the magistrate found, with record support, that mother wasn't required to provide information regarding the length and duration of her therapy sessions, father couldn't use the lack of such a disclosure as the basis for changing mother's parenting schedule back to step one and withholding from her the parenting time that she was entitled to under the step-five schedule.[5]

### 2. The Magistrate Didn't Err by Concluding that Father Impermissibly Restricted Mother's Parenting Time

¶ 31 Father also contends that the magistrate erred when he determined that by utilizing the step-down procedure under

---

[5] While it's true that the court found that mother had committed a technical violation of the plan, the court also found that the violation wasn't material. Under the circumstances, the court found that mother's response was one day late but that father also knew that she would be unavailable when he sent the message. Additionally, the court found that this wasn't the kind of message that mother had to respond to under the court's orders. Those findings have record support, so we have no basis to disturb them.

paragraph 7(e) to revert mother to step one, father improperly imposed a restriction on her parenting time. Section 14-10-129(1)(b)(I) prevents a court from restricting a parent's parenting time unless the court finds that the parenting time would endanger the child's physical health or significantly impair the child's emotional development.

¶ 32　　In response to father's argument that he was authorized to change mother's parenting schedule as soon as she failed to respond to his message as required under paragraph 7(b), the magistrate observed that this provision and paragraph 7 as a whole were "problematic at best" because it purported to allow *father* to restrict mother's "parenting time without a correlating finding that the parent's conduct would result in [a] situation endangering the child's physical health or significantly impair the child's emotional

development."[6] *See id.* The magistrate also "note[d] that the step[-]down procedure within the Amended Parenting Plan [was] draconian and [did] not consider the best interests of the child" given that "[t]here [was] nothing correlative between the violations [of the conditions] and the step down."

¶ 33 Father contends that the magistrate "improperly designate[d] moves between steps in the Step plan portion of the Amended Parenting Plan as a 'restriction in time.'" He asserts that the time "allocation between steps is similar for all Steps, it is only the parenting schedule that changes." In support of his argument,

---

[6] We disagree with father to the extent he repeats on appeal the argument that he didn't impermissibly withhold mother's parenting time because he was only acting in accordance with paragraph 7(e) when he started to follow the parenting schedule under step one. Regardless of what father believed the amended parenting plan said, only the district court had the authority to make decisions regarding mother's parenting time with the child. *See In re Marriage of Hatton,* 160 P.3d 326, 334 (Colo. App. 2007) (concluding that it was improper for the trial court to delegate to one parent decisions regarding the other parent's parenting time); *see also In Interest of D.R.V-A.,* 976 P.2d 881, 884 (Colo. App. 1999) (concluding that a court may not delegate parenting time decision-making to a guardian ad litem and family therapist). Moreover, as discussed above, the magistrate determined with record support that mother had not committed a material violation of the parenting plan.

father points out that mother and the child had the same number of monthly "contact days" under steps one and five.

¶ 34    But this argument misses the mark.  The fact that the *number of days* on which mother may get to spend *at least some time* with the child is roughly the same doesn't automatically mean that her parenting time is also the same regardless of the step she is on.  In other words, the parenting days and parenting time are not coextensive under the amended parenting plan.  Indeed, a comparison of the parenting schedules under steps one and five reveals that mother's parenting time varied significantly between the two plans.  Under step one, mother had eight hours of parenting time on two weeknights each week plus an additional twelve hours on one Saturday every other weekend.  This means that in a four-week month, mother was entitled to about fifty-six hours of parenting time.  Under step five, in contrast, mother was entitled to parenting time consisting of four hours one weeknight every week and two overnights every other weekend.  On a parenting time weekend, mother would have parenting time between approximately forty-four hours (if the next day was a school day) and forty-eight hours (if there was no school).

Accordingly, mother had between 104 and 112 hours of parenting time a month under step five.

¶ 35　　Considering these differences in the amount of mother's parenting time between the two plans, we can't say that the magistrate erred by determining that when father improperly moved mother back to step one of the parties' parenting schedule, father also inappropriately restricted her parenting time.[7]

¶ 36　　In sum, we discern no error in the magistrate's determination that father violated the parenting time order.

### E.　The Magistrate Didn't Reversibly Err when Making a Finding Regarding Father's Disciplinary Complaint Against the Therapist

¶ 37　　Father next contends that the magistrate clearly erred by finding that father had admitted to filing a complaint against mother's therapist resulting in the therapist's discipline. Specifically, the magistrate stated that

---

[7] We can't tell from father's briefing if he's asserting that the magistrate incorrectly applied the child endangerment standard, as opposed to the best interests of the child standard, in determining whether there was a restriction on mother's parenting time. To the extent he's arguing that the magistrate applied the wrong legal standard, we decline to address it because father failed to raise it in his petition for district court review. *See* C.R.M. 7(a)(7); *People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006).

> [f]ather confronted the [therapist] about not being in contact with [m]other's prior therapists. *Father admitted to filing a DORA complaint against [the therapist]. As a result of this complaint, [the therapist] took additional education classes.* Father went through [an exhibit] which indicated [that the therapist] "violated boundaries by bringing a client [into] her home." The [c]ourt did not find this line of questioning to be helpful to the [c]ourt.

(Emphasis added.) Father asserts that the italicized finding has no record support because the relevant complaint had been filed in 2021, approximately one year before mother started therapy with the therapist.

¶ 38 We agree with father that this specific finding isn't supported by the record. We see no indication that father admitted to filing the complaint that resulted in the therapist's discipline. Even so, we conclude that this error doesn't require reversal because father fails to carry his burden of showing harm from the magistrate's finding. *See Moody*, 843 P.2d at 1375.

¶ 39 In his opening brief, father contends that "[t]his error was one of several that [he] believes affected the [magistrate's] discretion and led to . . . [the magistrate's] arbitrary assessment" that his testimony wasn't credible. But while the magistrate did find

22

father's testimony not credible, father doesn't explain how the finding he challenges on appeal bore upon his credibility.

¶ 40 Further, the magistrate heard testimony from the therapist suggesting that father had filed a separate disciplinary complaint against her.

> [Father:] . . . [W]ere you sanctioned in 2022 for infractions related to your private therapy?
>
> [Therapist:] What does that have to do with anything?
>
> [Father:] I'm asking a question.
>
> THE COURT: It goes to credibility -- is what he's trying to establish. And I'll overrule the objection. You need to answer the question.
>
> [Therapist:] *So a person did file a complaint just as you filed a complaint.*
>
> . . . .
>
> [Father:] Okay.

(Emphasis added.) This colloquy shows that the magistrate erred only to the extent he equated father's complaint with the complaint that purportedly resulted in the therapist's discipline. There was still record support for the conclusion that father had filed a complaint against the therapist, even if he hadn't admitted to that fact.

¶ 41   Regardless, we don't see any indication that this conclusion was the foundation of the magistrate's credibility determination. To the contrary, the magistrate characterized the line of questioning as unhelpful in resolving the issues before him. Considering this record, we can't say that the magistrate's error in summarizing the evidence substantially influenced the outcome of this case or impaired the basic fairness of the proceeding itself. *See Stockdale,* ¶ 32. Accordingly, any error was harmless and doesn't warrant reversal. *See* C.R.C.P. 61 (requiring courts to disregard any error that doesn't affect the substantial rights of the party).

### F.   The Magistrate Didn't Err in Calculating Mother's Makeup Parenting Time

¶ 42   Father contends that the magistrate erred in awarding mother makeup parenting time as a remedy for father's violation of the parenting time order. We discern no error.

¶ 43   The magistrate determined that mother was entitled to makeup time consisting of the two overnights every other weekend that she missed after father started withholding parenting time that she had been exercising in accordance with step five of the parenting schedule. The magistrate found that during the

24

five-month period between October 2023 and the hearing in February 2024, mother had missed twenty overnights with the child. In addition, he awarded mother two overnights for the one month between the hearing date and when the order was issued. The magistrate arrived at twenty-two overnights of makeup time based on mother's statements at the hearing that, during the relevant period, she had missed four overnights per month except for one month when she only had the right to two overnights. The magistrate stated that mother "shall exercise an additional weekend each month of overnight parenting time"; that those "overnights shall begin after school (or at 4:00 p.m. if the child is not in school or camp) on Friday and will last through 4:00 p.m. on Sunday"; and that the goal was to have the makeup time completed by the start of the upcoming school year (i.e., August 2024).

¶ 44 In challenging this ruling, father asserts that (1) mother lost no parenting time because she had more "days of contact" with the child under step one than what she would have had if she had remained on step five; (2) the schedule for completing the makeup time "was impossible to execute as written" and wasn't in the best

interests of the child; and (3) the makeup time wasn't of the same duration as parenting time that mother was denied.

¶ 45    In support of his first argument, father points out that while mother calculated her missed parenting time in overnights, the magistrate repeatedly referred to missed "days" during the hearing. Under these circumstances, father further argues, the magistrate gave mother twenty-two "days" (not overnights) of makeup parenting time. In doing so, father asserts, the magistrate erred because while mother "did miss out on [seventeen] overnights" through the date of the order, she "gained [twenty-four] Monday afternoons under Step [one] during that time that [we]re not allocated under Step [five], resulting in a total increase of seven . . . additional days of contact." But this argument is premised on an incorrect characterization of the magistrate's ruling. In his order, the magistrate clearly and unequivocally calculated mother's makeup parenting time in overnights, not days. Further, father offers no meaningful explanation why his calculations using "days of contact" should prevail over the magistrate's determination for makeup of missed overnights. *See Sinclair Transp. Co. v. Sandberg*, 2014 COA 76M, ¶ 74 (declining to address "bald

assertions of error that lack any meaningful explanation or support in legal authority").  Moreover, father largely rehashes his argument that "contact days" equate to parenting time, a proposition that we have already rejected above in connection with the restriction issue.

¶ 46    We also disagree with father's argument that the magistrate erred by ordering an additional weekend each month of overnight parenting time so that mother could complete her makeup time by the beginning of the upcoming school year.  The statute provides that if makeup parenting time can't be completed within six months of a parent's violation of a parenting time order, then "the parenting time shall be made up within one year after the noncompliance occurs."  § 14-10-129.5(2)(d)(II).  Given that father started withholding mother's parenting time in October 2023 — and their dispute didn't get resolved until about six months later — the magistrate didn't err by imposing a schedule that was intended to complete makeup time by August 2024, within twelve months of father's noncompliance.

¶ 47    Finally, father contends that the magistrate violated section 14-10-129.5(2)(d)(I) by giving mother more parenting time than she would have gotten had father complied with the amended parenting

plan. Specifically, father points out that while under step five mother was entitled to keep the child until 4:00 p.m. on Sunday only if there was no school the next day, her makeup time provided for that schedule regardless of whether the child had school the next day. And as part of this argument, father asserts that the makeup time schedule failed to incorporate the CFI's recommendations and was therefore not in the best interests of the child. But like several other arguments in his appeal, father failed to assert these two arguments in his petition for district court review. *See* C.R.M. 7(a)(7). We therefore decline to address them for the first time in this appeal. *See K.L-P.*, 148 P.3d at 403; *see also Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("We review only the specific arguments a party pursued before the district court.").

¶ 48    In conclusion, we perceive no error in the magistrate's decision to remedy father's noncompliance with the parenting time order by awarding mother twenty-two overnights of makeup parenting time.

### III. Appellate Fees and Costs

¶ 49    Father and mother each request an award of costs incurred in connection with this appeal. Father also requests an award of "attorney's fees related to this [appeal]."

¶ 50    We deny father's attorney fee request because he's not entitled to such fees as a nonattorney pro se party. *See Smith v. Furlong*, 976 P.2d 889, 890 (Colo. App. 1999) (holding that there is no basis to award "attorney fees" to a nonattorney pro se litigant because no "attorney fees" exist in such situations). And because we affirm the order, we deny father's request for appellate costs. However, mother is entitled to her costs on appeal. *See* C.A.R. 39(a)(2) ("[I]f a judgment is affirmed, costs are taxed against the appellant."). Mother may pursue those costs in the district court by filing an itemized and verified bill of costs within fourteen days after entry of the appellate mandate. *See* C.A.R. 39(c)(2).

### IV. Disposition

¶ 51    The order is affirmed.

JUDGE WELLING and JUDGE SCHUTZ concur.